UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD ROTTLER,

       Plaintiff,                        CIVIL ACTION NO. 09-13136

       v.                              DISTRICT JUDGE JOHN FEIKENS

MICHIGAN AUTOMOTIVE          MAGISTRATE JUDGE MARK A. RANDON
COMPRESSOR, INC.

       Defendant.
_____/

**REPORT AND RECOMMENDATION ON
<u>PLAINTIFF'S MOTION TO REMAND (DKT. NO. 5)</u>**

This matter comes before the Court on Plaintiff Ronald Rottler's ("Rottler") motion to remand (Dkt. No. 5). Rottler's motion to remand was referred to the undersigned pursuant to 28 U.S.C. § 630 (B)(1)(B) for a report and recommendation. This motion has been fully briefed and the undersigned held oral argument on September 22, 2009. For the reasons set forth below, it is **RECOMMENDED** that Rottler's motion be **GRANTED** and that this matter be **REMANDED** to the Jackson County Circuit Court.

**<u>BACKGROUND</u>**

**A.    Procedural History**

On July 1, 2009, Rottler sued Defendant Michigan Automotive Compressor, Inc. ("MACI") in the Jackson County Circuit Court (Case No. 09-2029-CL), asserting a breach of

contract claim. MACI filed notice of removal on August 10, 2009 (Dkt. No. 1), claiming that Rottler's lawsuit is subject to, and pre-empted by, the Employee Retirement and Income Security Act ("ERISA") of 1974, as amended, 29 U.S.C. §§ 1001-1381. On August 17, 2009, Rottler filed the instant motion to remand (Dkt. No. 5).

**B.    MACI's Voluntary Separation Plan**

MACI is Rottler's former employer. Rottler's complaint alleges that MACI offered Rottler the opportunity to participate in a Voluntary Separation Plan ("VSP") (Dkt. No. 8, Ex. 2), if Rottler voluntarily resigned his employment with MACI, effective March 31, 2009, and signed a General Release and Separation Agreement. The VSP at issue is dated February 2, 2009, and was offered to 703 of MACI's employees. In order to participate, employees had to accept MACI's offer within 45 days of receipt of the VSP. If an eligible employee agreed to resign under the VSP, then MACI agreed to pay that employee: (1) 26 weeks of the employee's base weekly pay; (2) additional separation pay based on years of service[1] with MACI; and (3) $7,500 "to use to purchase health care or for other expenses." These three categories of payments would be added together and paid in one lump sum – on or about April 15, 2009 – to eligible departing employees. Pursuant to Article 6, the VSP was to operate "for a short period of time" and not anticipated to "continue in subsequent calendar years" (beyond 2009).

Once an employee accepted MACI's offer, all of that employee's company provided benefits, such as medical and life insurance, terminated on March 31, 2009 (except for the

---

[1] Employees with between 1-10 years of service would receive 1 additional week of weekly base pay for each year of service; employees with 11 or more years of service would receive 2 additional weeks of weekly base pay, for each year of service beyond 10 years.

employee's right to continue group health coverage under COBRA[2]).  The VSP states that it is "intended to be a welfare benefit plan within the scope of" ERISA and contained procedures for an employee to challenge the denial of benefits.

**C.     VSP Eligibility**

Eligibility and participation in the VSP were not automatic.  Employees had to meet certain requirements set forth in the VSP in order to participate.  Specifically, Article 1.2 of the VSP states:

> "Eligible Associate" means any Associate (1) who is employed full-time with the Company as of February 1, 2009; (2) who is designated as eligible by the Company in its sole discretion; (3) who is not excluded from eligibility by the Company as a result of possessing critical skills necessary for on-going business administration, as determined in the sole discretion of the Company; (4) who is not excluded from eligibility or participation by the Company as a result of application of any Department Headcount Cap under Section 2.1(b), as determined in the sole discretion of the Company; and (5) who timely meets all of the participation requirements in Section 2.1 and conditions for payment of benefits in Section 2.4, as determined by the Company in its discretion....

In other words, MACI had discretion over which employees could participate in the VSP – MACI could refuse to allow any employee to participate in the VSP if, among other things, MACI determined that the employee possessed "critical skills" necessary to MACI's business or if too many employees resigned from a particular department.  Furthermore, Article 2.4 of the

---

[2] The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 29 U.S.C. § 1162, an amendment to ERISA, requires employers to continue group insurance coverage for up to eighteen months after separation for those employees who continue to pay their own premium.

VSP placed additional conditions on an employee's eligibility for severance pay. For instance, in order to be eligible to receive severance pay, an employee must remain an "at-will" employee and continue to "perform services satisfactory to MACI" through March 31, 2009. Any employee terminated by MACI prior to March 31, 2009 for: "(I) unsatisfactory performance; (ii) illegal, dishonest or fraudulent conduct; (iii) actions or conduct detrimental to the best interest of the Company or the health and safety of Associates as determined by the Company; (iv) failure to comply with the rules, policies, procedures or professional standards as established by the Company; (v) improper use of Company facilities or equipment; or (vi) violation of the Company's attendance program" would not be eligible to receive severance pay. Thus, MACI could terminate an employee prior to March 31, 2009 – for just about any reason – and that employee would be ineligible to participate in the VSP.

Rottler claims that he accepted MACI's offer under the VSP, resigned his employment with MACI and signed the General Release and Separation Agreement, but that MACI refused to pay him a severance. Rottler claims MACI owes him $35,173.60 in severance pay, based upon his weekly base pay, years of service with MACI, etc. MACI responds that Rottler is not entitled to any severance pay, since MACI terminated Rottler's employment (during oral argument, MACI's counsel stated that Rottler was terminated for inappropriate internet usage on MACI's computers).

## APPLICABLE LAW

The issue before the Court in deciding Rottler's motion for remand is whether MACI's VSP is a "plan, fund or program" subject to ERISA. If so, the lawsuit was properly removed to

the United States District Court on the basis of federal question and/or ERISA preemption. If not, the matter is a state law claim for breach of contract over which this Court does not have jurisdiction, necessitating remand.

ERISA defines an employee welfare benefit plan as "any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants ... (A) ... benefits in the event of ... unemployment ... or (B) any benefit described in section 186(c) of this title." 29 U.S.C. § 1002(1). In turn, section 186(c) lists among covered benefits "money or other thing[s] of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits." 29 U.S.C. § 186(c)(6). However, not all severance pay arrangements fall within the ambit of ERISA; to create an ERISA obligation on the part of the employer, the plan must otherwise meet certain elements of an employee welfare plan. *See Cassidy v. Akzo Nobel Salt, Inc*., 308 F.3d 613, 615 (6th Cir. 2002); *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1409 (6th Cir. 1996); *Kolkowski v. Goodrich, Corp.*, 448 F.3d 843 (6th Cir. 2006).

The Supreme Court has made clear that ERISA applies to employee benefit "plans," not simply to "benefits." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11 (1987). Unfortunately, the ERISA statute does not give a precise definition of what may constitute an employee benefit plan. *See id.* at 8-9 ("the terms 'employee benefit plan' and 'plan' are defined only tautologically in the statute, each being described as 'an employee welfare benefit plan or employee pension benefit plan or a plan which is both an employee welfare benefit plan and an

employee pension benefit plan'"); *Massachusetts v. Morash*, 490 U.S. 107, 113 (1989) ("The precise coverage of ERISA is not clearly set forth in the Act").

A severance plan which provides for a "one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation" is not a benefit plan within the scope of ERISA. *Fort Halifax*, 482 U.S. at 12 (1987) (one-time severance payment to employees in the event of a plant closing was not a protected benefit plan under ERISA). The Supreme Court went on to say in *Fort Halifax* that "[t]o do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits." *Id*. The need for an administrative scheme may arise, however, when the employer "'assumes responsibility to pay benefits on a regular basis, and thus faces ... periodic demands on its assets that create a need for financial coordination and control.'" *Cassidy*, 308 F.3d at 616 (quoting *Fort Halifax*, 482 U.S. at 12).

The Sixth Circuit has elaborated on the *Fort Halifax* decision, in an attempt to set forth the relevant factors that a court should consider when evaluating whether a severance pay plan is governed by ERISA. In particular, the Sixth Circuit has instructed courts to look at two particular factors: (1) whether the employer has discretion over the distribution of benefits under the severance plan; and (2) whether the severance plan places ongoing demands on an employer's assets. *See, Kolkowski*, *supra,* 448 F.3d at 848.

# ANALYSIS

### A.  Discretion Over the Distribution of Benefits

Both parties agree that the relevant test is the two-pronged test set forth in *Kolkowski, supra*.³  However, the parties disagree as to how this test applies to the VSP.  Regarding the first prong, the Sixth Circuit has stated:

> [T]he pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' **eligibility for** and **level of benefits**, must analyze each employee's particular circumstances in light of the appropriate criteria.

*Sherrod v. General Motors Corp.*, 33 F.3d 636, 638 (6th Cir. 1994) (emphasis added).

There is no question that MACI had discretion over which employees could participate in the VSP.  As such, it would appear that the VSP satisfies the first prong of the *Kolkowski* test.  However, MACI had no discretion under the VSP to determine what "level of benefits" an eligible employee would receive.  Under the VSP, a simple, mathematical calculation controls the amount of the severance payment, and calculation of the amount paid to departing employees did not require any case by case determination.  Once an employee was deemed "eligible" to participate in the VSP, all that remained for MACI to do was to plug numbers (*e.g.,* an employee's base pay, years of service, etc.) into a formula to calculate how much of a lump-sum

---

³ MACI also argues that its "Plan fully meets the Dillingham test."  The undersigned recognizes that the Sixth Circuit has also used the test established in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) to determine whether a plan constitutes an ERISA plan and that MACI arguable satisfies this test.  However, *Dillingham* is not dispositive and, with respect to severance plans, the Sixth Circuit has developed the more specific test set forth in *Kolkowski*.

severance payment the eligible employee would receive. The Sixth Circuit has held that severance plans that involve "[s]imple or mechanical determinations" do not constitute ERISA plans. *Sherrod v. Gen. Motors Corp.*, 33 F.3d 636, 638 (6th Cir. 1994) (finding that a severance plan that provided for a one-time payment for employees who ceased working did not constitute an ERISA plan because the plan required no continuing administration and a collective bargaining agreement predetermined payment amounts).

Furthermore, it is not entirely clear that deciding whether employees performed all remaining duties "in a manner satisfactory to" MACI required MACI to make case by case determinations as to eligibility. Assessing whether an employee complied with Article 2.4(b) of the VSP appears to be a purely ministerial task, because eligibility for benefits was lost for every conceivable dischargeable offense. Although these types of determinations require a minimal amount of discretion, such minimal discretion does not necessarily imply an ongoing administrative scheme. For instance, the First, Ninth, and D.C. Circuits have all held a plan does not require an ongoing administrative scheme – as contemplated by ERISA – even if the employer must exercise a small amount of discretion. *See Rodowicz v. Mass. Mutual Life*, 192 F.3d 162, 172 (1st Cir. 1999); *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1316-17 (9th Cir. 1997) (holding that a Stay on Letter providing that employees must perform their duties in a "satisfactory manner" to receive benefits did not constitute an ERISA plan); *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994) (holding that promise of severance in employment contract did not require an ongoing administrative scheme, even though employer had to determine if employee was terminated for cause to calculate severance pay); *but see Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 679-80 (8th Cir. 2004) (holding that severance

package available only to those terminated "without cause" required ongoing administrative scheme, and thus qualified as an ERISA plan). As one court has noted, "ERISA is not implicated where the administrator of a plan was authorized in his discretion to exclude all employees who had been terminated 'for any reason or no reason at all,' because no careful assessment of 'cause' would be required...." *D'Oliviera v. Rare Hospitality Int'l, Inc.*, 150 F.Supp.2d 346, 351 (D.R.I. 2001). In sum, since the VSP granted MACI complete discretion over which employees could participate in the program, such discretion arguably satisfies the first prong of the *Kolkowski* test, but does not clearly do so. As such, the Court must look to the second prong of the *Kolkowski* test to determine whether the VSP is an ERISA plan.

**B.      Ongoing Demand on Employer Assets**

MACI argues that the VSP satisfies the second – or "ongoing demands on an employer's assets" – prong of the *Kolkowski* test, since employees who elected to participate in the VSP may be eligible for benefits under MACI's retiree health plan and/or would be eligible for COBRA benefits. MACI avers that these benefits require ongoing administration, thereby satisfying the second-prong of the *Kolkowski* test. However, a review of the cases in which the Sixth Circuit has found an "ongoing demand on an employer's assets" sufficient to implicate ERISA shows that MACI's argument is not well taken.

In *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1409-10 (6th Cir. 1996), the Sixth Circuit found that an ERISA plan existed because the severance plan at issue entailed periodic demands on the employer's assets. In particular, the severance plan in *Shahid* provided for: (1) a substantial severance payment; (2) professional re-employment assistance; (3) continuance of medical (excluding dental and vision) and life insurance coverage up to one year; and (4) a

retirement "grow-in" provision. *Id.* at 1410. Likewise, in *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 616 (6th Cir. 2002), the Sixth Circuit found that an ERISA plan existed because the severance plan at issue placed an "ongoing demand" on the employer's assets, as the plan allowed employees to choose between a lump sum payment or a two-year salary continuation and the plan permitted extension of medical, dental, and life insurance. Finally, in *Kolkowski,* 448 F.3d 843, the Sixth Circuit found that the plan at issue satisfied the "ongoing benefits" prong, as the employer agreed to provide medical, dental and life insurance benefits for a period of time after the lump-sum severance payout.

Contrasting the severance plans at issue in the three Sixth Circuit cases cited above to the VSP at issue in this case starkly illustrates that the VSP falls woefully short of satisfying the second prong of the *Kolkowski* test. First, the VSP, itself, anticipates an abbreviated plan period - a forty-five (45) day acceptance deadline followed by a close-out check within fifteen (15) days of resignation. On the date of resignation, all employee benefits immediately terminate, and the VSP does *not* provide salary continuation, payment of the severance money over time; extended life, medical, or dental insurance coverage; outplacement assistance, a retirement grow-in provision, or any other benefit, derived from the VSP, that would require an ongoing administrative scheme or be subject to mismanagement.[4] Instead, the VSP surgically terminated MACI's employer obligations to those eligible employees on March 31, 2009.

---

[4] "[O]ngoing investment and obligations are uniquely vulnerable to employer abuse or employer carelessness, and thus require ERISA's special prophylaxis." *Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 454 (1st Cir. 1995).

Second, COBRA benefits and future participation in MACI's retiree health plan (for certain employees) are not benefits conferred by the VSP.[5] Rather, MACI would be required to provide these benefits regardless of whether a departing employee left under the VSP, simply quit on their own or was terminated by MACI. Furthermore, the VSP does not even purport to pay a departing employee's COBRA premiums; rather, the VSP awards a departing employee $7,500 to "purchase health care or for other expenses."[6] An employee can choose to use this $7,500 to purchase COBRA coverage, to purchase individual health coverage or simply spend this money on anything they choose. Furthermore, even if the VSP did require MACI to pay a departing employee's COBRA premiums directly, courts have held that this additional benefit would not transform the entire severance plan into an ERISA-protected plan. *See, e.g.*, *O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262, 270 (1st Cir. 2001).

In sum, the "benefit" conferred under VSP consists of little more than a single lump-sum severance payment – any additional benefits referenced in the VSP would otherwise have been provided upon termination or retirement to all employees and do not entail any "ongoing demand" on MACI's assets. "In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefit from the accumulated funds." *Massachusetts v. Morash*, 490 U.S. 107, 115, (1989). Here, however, MACI is paying one lump-sum payment, triggered by a single event, under the terms of the VSP that explicitly provides a limited operational period, and does not

---

[5] The fact that not all of the VSP participants were eligible for MACI's retiree health plan further indicates that it was not an obligation of the VSP but rather a general obligation of MACI.

[6] This also indicates that rather than administer benefit payments through the VSP, MACI opted to shift the burden its employee participants.

anticipate any ongoing benefit that would alter its existing administrative obligations. As such, the VSP is more like the "one-time" severance program discussed by the Sixth Circuit in *Sherrod, supra,* than the severance programs discussed by the Sixth Circuit in *Kolkowski, Shahid* and *Cassidy, supra,* which placed ongoing demands on the employers' assets.

### C.    MACI's Self-Identification of the VSP as an ERISA Plan is not Dispositive

Finally, the fact that the VSP states that it is "intended to be a welfare benefit plan within the scope of" ERISA and outlined the procedures for challenging the denial of benefits is of no import. MACI's labeling the VSP an "ERISA" plan does not – in and of itself – transform an otherwise deficient plan into one covered by ERISA. Indeed, the Sixth Circuit recently held that simply because an employer labels a benefit an ERISA plan does not make it so. *See Langley v. DaimlerChrysler Corp*., 502 F.3d 475, 481 (6th Cir. 2007) ("A contrary ruling would enable employers to engage in regulation shopping. If, by merely labeling a particular benefit an 'ERISA plan,' an employer could convert an otherwise exempt benefit into one covered under ERISA, it could avoid state tort liability under ERISA-preemption doctrine.") In other words, MACI's labeling of the VSP as an "ERISA plan" does not dictate the result.

Accordingly, the undersigned finds that the VSP is not governed by ERISA. Therefore, this case should be remanded to state court, as there is no subject matter jurisdiction over Rottler's state law claim.

## CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that Rottler's motion to remand (Dkt. No. 5) be **GRANTED** and that this matter be **REMANDED** to the Jackson County Circuit Court.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: September 28, 2009

Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 28, 2009, by electronic and/or ordinary mail.

s/Melody R. Miles
Case Manager to Magistrate Judge Mark A. Randon